# Wheeling.

## SCHILLING, ADM'R, *v.* SHORT.

### Decided December 13, 1879.

#### (Absent, MOORE, JUDGE.)

<span style="margin">1879 Special Term.</span>

1. A case in which the court enforced the payment of the purchase-money and the lien thereof against realty, when the vendor at the time of the sale and conveyance thereof, by deed of general warranty, did not have the title thereto, but who afterwards by arrangement and with the assent of his vendee, procured the legal title to be conveyed to the vendee, the vendee at the time of sale and deed being put in actual possession of such realty by the vendor, and never having been evicted of his possession. (See opinion of the Court.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Roane, rendered on the 5th day of September, 1878, in a cause in said court then pending, wherein J. G. Schilling, administrator, was plaintiff and Hiram Short was defendant, allowed upon the petition of said Short.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the decree appealed from.

The facts of the case are fully stated in the opinion of the Court.

*Henry C. Flesher,* for appellant, cited the following authorities:

1 Fon. 113, and cases there cited; Pomeroy on Contracts, §§267–270; 11 W. Va. 562.

1879
Special Term.

Schilling,Adm'r
v.
Short.

*J. G. Schilling,* for appellee, cited the following authorities:

3 W. Va. 70; 1 Munf. 330.

HAYMOND, JUDGE, delivered the opinion of the Court:

J. G. Schilling, administrator of the estate of Henry D. Chapman, deceased, filed his bill in equity at the February rules, 1874, of the circuit court of the county of Roane, against Hiram Short of said county, in which he alleges in substance that on the 27th day of October, 1864, the said Henry D. Chapman, then in life, sold and and conveyed to said Hiram Short a tract of three hundred acres of land, more or less, in said county, lying on the head of Laurel fork of Henry's fork of the Little Kanawha river, for the sum of $900.00 to be paid as follows: $200.00 in two years from date; $200.00 in three years; $200.00 in four years; and the remaining $300.00 in five years, with annual interest, and retained a lien on said land on the face of the said deed for the said purchase-money and interest. An official copy of said deed is filed as an exhibit marked number one. The bill also alleges that said Short on the day and year last aforesaid executed his four several single bills to said Chapman, three of which were for $200.00 each, and the fourth for $300.00, due and payable in two, three, four and five years from said date, with annual interest, and delivered the same to the said Chapman for said purchase-money, and received the said deed of conveyance, and took possession of the said land, and has ever since and still holds possession of the same; that the third and fourth of said single bills for the sum of $200.00 and $300.00 respectively, with annual interest thereon from said date, are and remain wholly unpaid, except the sum of $7,60 paid August 28, 1867, endorsed on the third one of said single bills. The said third and fourth single bills are filed with the bill as exhibits, marked numbers two and three. The plaintiff also alleges that in the year 1869 the said

Chapman died, and that he, plaintiff, was duly appointed and qualified his administrator, and that the sums of money mentioned in said third and fourth single bills, although long since due and payable, were not paid to said Chapman in his lifetime, nor to the plaintiff since his death, and that the said Short has hitherto failed and refused to pay the same, and still refuses and fails so to do. And the plaintiff also prays that the vendor's lien for said unpaid purchase-money may be enforced against the said three hundred acres of land; and prays for general relief.

The said deed, exhibit number one, filed with the bill is dated the 27th day of October, 1864, and conveys the said three hundred acres of land, with general warranty, by metes and bounds, and recites that the conveyance is for the consideration named in the bill payable with interest annually, as stated in the bill, and expressly reserves on its face a lien on said land for the payment of the said purchase-money with all the interest that may accrue thereon. This deed was admitted to record in the recorder's office of Roane county, on the 6th of February, 1865. The said three and four single bills given for the two last instalments of the purchase-money, filed with the bill, marked numbers two and three as exhibits, also appear in the record, and the purport and substance of them is correctly described in the bill. On the 7th day of September, 1874, it appears that the said Short appeared and filed his answer to said bill, in which he admits that he bought the land, obtained the deed, and gave the bonds mentioned in the bill, and says that the bonds were at one time assigned by said H. D. Chapman to his brother, Hiram Chapman, by endorsing his name thereon, and while said Hiram held said bonds, he paid said Hiram thereon, as assignee thereof, part of the money due thereon, and afterwards said Hiram returned said bonds to said H. D. Chapman, who erased his assignment therefrom, but did not credit the amount paid said Hiram while he held said bonds; that he (respondent) paid H.

D. Chapman $400.00, the two first bonds given for said land, and also paid him, before he assigned said bonds to Hiram, some money and property on the bonds mentioned in the bill; also C. C. Smith paid said H. D. Chapman for him $120.00 June 18, 1867; that he (respondent) entered on said land when wholly unimproved, and cleared out about seventy-five acres, planted an orchard and built houses and barns thereon; that he sold fifteen acres of said land to C. C. Smith, and one hundred acres thereof to his son, Josephus Short, who entered thereon and cleared twenty-five acres, planted an orchard and built houses, &c.; that he sold one hundred acres of said tract to James Butcher, who cleared out a farm thereon; and he (respondent) and those claiming under him have held said land since the year 1864, but under the following circumstances: Said tract of land is part of a large tract of land containing some seven thousand acres purchased by said H. D. Chapman of one Quarrier. of Kanawha county, and said Chapman had failed to pay the purchase-money to Quarrier, of which fact he (respondent) had no notice before he bought said three hundred acres and obtained said general warranty deed filed with the plaintiff's bill; that a suit in chancery was brought in the circuit court of Roane county by said Quarrier against said H. D. Chapman, to collect the said purchase-money so due him from said H. D. Chapman, amounting to over $2,000.00; and the said land was sold to raise the same, and by agreement entered into between H. D. Chapman and J. G. Schilling, the plaintiff, and him (respondent) and A. H. Short, another vendee of said H. D. Chapman of part of said seven thousand acres of land, the lands of him (respondent) and A. H. Short, were sold to raise money to pay the original purchase-money due from Chapman to Quarrier, and said Schilling, administrator, the complainant agreed *that he (respondent) and A. H. Short should have credit on their purchase-money to Chapman's estate to the extent of their payments made on said original purchase-*

*money,* and damages for the trouble occasioned in the premises; and he says that he had to buy said land at the sale made by H. C. McWhorter, commissioner in the case of *Quarrier's representative* v. *Chapman,* and was compelled to make great sacrifices, and did pay Quarrier's estate for said three hundred acres of land, in order to save the same from being sold and being wholly lost to him; that when this three hundred acres of land came to be sold by commissioner McWhorter for the Quarrier debt, said Chapman was involved in a very large indebtedness against his property, and he, Chapman, was of doubtful solvency; that he, Chapman, had made him a general warranty deed, and it was to his interest to have said land bought in by respondent to save his; that the land had increased in value by the valuable improvements put on it by him, respondent, and so he says that he has *wholly paid off and discharged the whole of the purchase-money secured by the bonds filed* with the bill; that if he had not come forward and paid Chapman's said purchase-money debt to Quarrier, the land would have been lost to him together with the improvements thereon, and Chapman's estate would have been liable to him for damages to the extent of said land and improvements &c. This answer appears to have been sworn to in open court.

It appears that on the 7th day of September, 1874, the plaintiff, by leave of the court, filed his special replication in writing to the answer of said Hiram Short, in which he says in substance that he does not know that defendant paid said Hiram Chapman, an alleged assignee of Henry D. Chapman, anything on said bonds, and he denies that he made any such payment, and calls for strict proof thereof. He denies that defendant paid said H. D. Chapman money and property on the bonds sued on, except the sum of $7.60 endorsed on one of the bonds on the 28th of August, 1867. He also says that on that day the defendant applied to J. G. Schilling, who was assisting said H. D. Chapman in transacting his busi-

ness, for a receipt for the amount of some cattle that he had let said Chapman have, and together they went to see said Chapman, when a settlement was made, allowing all the payments made by the defendant up to said 28th of August, 1867, which paid up the note for the second payment on said land, and left a balance of $7.60 which was endorsed on one of the bonds sued on as aforesaid; that the $120.00 paid by C. C. Smith, June 18, 1867, was included in said settlement, and he denies that said $120.00 was paid on the bonds sued on, or that the same should be credited on said bonds, the defendant having received credit for the same at the said settlement. He denies what is said in the answer about Chapman's purchase of seven thousand acres of land of Quarrier, but says the facts to which he presumes said answer refers, are as follows: Said Chapman sold to Peter Heckert about two thousand seven hundred acres of land, retaining a lien for the purchase-money in the deed for the same; that he assigned the debt and lien to said Quarrier, who instituted suit thereon in the circuit court of Roane county in chancery, and the said land was sold and purchased by Chapman; that one of the deferred instalments of purchase money became due, and said Schilling, who was assisting said Chapman in transacting his business, called on defendant and his brother A. H. Short, for money due from them to meet said payment to Quarrier, and they expressed some fears that they might have some difficulty about their lands, when said Shilling suggested that some arrangement might be made with said Quarrier through his attorney, H. C. McWhorter, Esq., by which this land might be released from further liability; and so it was an arrangement was made by the assent and agreement of all the parties, that defendant and A. H. Short should pay money enough to pay the installment of purchase-money due Quarrier, amounting, principal, interest, costs and commissions, to $452.00, and their land be put to a nominal sale, and be bid off by them for that amount, and thereby their land

be released from further liability on account of Quarrier's claim, which was accordingly done; all of which fully and at large appears by the article of agreement, report of sale, and decree rendered thereon, and copies of which are filed with the replication as exhibits marked numbers five, six and seven. He also says that said agreement was made for the benefit of defendant and A. H. Short, to release them from anxiety about possible difficulty about their lands; that defendant paid $200.00 of that amount.

He denies that the administrator made any other arrangement, and says that said Chapman was then in full life. He admits that the money so paid by defendant was to be a credit on said bonds as of the 3d day of August, 1869, and he says that said Chapman in his lifetime was, and the plaintiff since his death, was and still is, willing to allow the defendant credit for the amount so paid by him, and that he has frequently applied to said defendant for a settlement on such basis, but he has always refused to settle. He denies that defendant was to be allowed anything for damages for the trouble occasioned in the premises. He says that he understood that there was, at the time the said money was paid to Quarrier, more than the amount defendant paid due from the defendant to said Chapman, and he says that at that time there was due from the defendant $200.00, with interest thereon for nearly five years. He denies that the defendant has paid off and discharged the whole amount of the purchase-money for said land secured by the bonds filed with the bill. He denies that defendant paid Chapman said purchase-money debt to Quarrier, but says he only paid about $200.00, and the said debt was about $2,000.00, all of which has been paid by said Chapman and his personal representative, and Chapman's title to the said land is perfect. He says he resents the defendant's insinuations about the indebtedness and doubtful solvency of said Chapman, while he refused to pay said Chapman the debt he justly and honestly owes him; that

the defendant, who refuses to pay an honest debt, should not throw dirt at Chapman, who is in his grave, an honest debtor who struggled hard to pay his debts, and whose assets, if they could have been made available, would have been double and treble his liabilities. And he, plaintiff, replies generally to said answer.

On the 3d day of March, 1875, it appears that the court by an order made in the cause referred the cause to one of its commissioners with directions to him to take, state and report an account between the parties, showing the amount of plaintiff's demand and of defendant's set-off, showing what balance, if any, is due and owing by said defendant to the plaintiff upon the demand in controversy; and the commissioner was further directed to report any matter deemed pertinent by himself or specially required by any of the parties, &c. It appears the plaintiff filed an amended bill in the cause; and that on the 6th day of September, 1877, the following order was made : " This day defendant, Hiram Short, tendered his demurrer to plaintiff's amended bill, which demurrer was on his motion set down for argument, and being argued is overruled by the court, and on motion of said plaintiff a rule is awarded against Hiram Short to appear here on the first day of next term to answer said amended bill."

In the amended bill the plaintiff alleges substantially as follows : That he complains and says that he heretofore exhibited his original bill against Hiram Short; that said Short answered said bill, and alleged that he had sold of the land involved in said original bill, fifteen acres to C. C. Smith, one hundred acres to his son, Josephus Short, and one hundred acres to James Butcher; and he further alleges that said James Butcher has sold his said one hundred acres to Thomas Stewart, and Thomas Stewart to William R. Donahugh. He therefore prays that said C. C. Smith, Josephus Short, James Butcher, and Thomas Stewart and William R. Donahugh be made defendants to said original bill as well as

the amended bill, and that the said vendor's lien mentioned in said original bill may be enforced, and said tract of land mentioned in said original bill may be subjected to the payment of plaintiff's demand; and he prays for general relief.

On the 6th day of November, 1877, the defendant, Hiram Short, with leave of the court, filed his supplemental answer to the original bill and to said amended. bill, in which he says in substance that on the 15th day of May, 1855, the said H. D. Chapman sold and conveyed to one Peter Heckert a tract of land then lying in the county of Gilmer, but now in the county of Roane, containing two thousand nine hundred and eight acres, for the price of $2,600.00, payable in five years, with interest payable annually; that said Heckert executed to said Chapman his bond for said purchase money, and a lien was retained in said deed to secure the payment of the purchase-money ; and that on the 27th day of September, 1855, the said Chapman, for value received, assigned the said bond to one A. W. Quarrier; that Peter Heckert wholly failed to pay said bond or any part thereof, and that the said Quarrier filed his bill in the circuit court of Roane county, at the August rules, 1860, to subject the land to sale for said purchase-money ; and in that suit such proceedings were had, that the said land was sold, and purchased at a judicial sale made therein by said H. D. Chapman, and that said Chapman failed to pay the purchase-money, and said land was subsequently to be re-sold, unless the said Chapman should pay the said purchase-money, and it was agreed by and between him, respondent, and said Chapman, that at such sale of the land he, respondent, was to buy in the three hundred acres of land in the bill mentioned, and thus obtain the legal title to the said three hundred acres purchased of said Chapman, that being the only way by which he, respondent, could obtain the legal title to the land ; that he was to pay to H. C. McWhorter, commissioner, the one-half of $452.00, to release the same from further lia-

bility an account of purchase-money due from Chapman, on the payment of which sum he, respondent, was to have a deed from said McWhorter in fee simple clear of all liens and encumbrances; and he says that in pursuance of said agreement he did pay off and discharge the sum of one-half of said $452.00 with interest to said commissioner, in full discharge of the purchase-money for said three hundred acres of land, and that the sale thereof to him by said commissioner was duly confirmed by the court, and that the said McWhorter in pursuance with the decree of said court did on the 3d day of November, 1869, convey to him the said three hundred acres of land by apt and proper deed (which is made a part of the answer) free, clear and discharged from all liens and encumbrances whatsoever, to all of which the said Chapman, in his lifetime agreed and consented. So that the said Chapman at the time of his death had no lien on said three hundred acres of land, but that he had wholly paid the purchase-money with said Chapman's assent, and obtained his deed clear of liens; that said H. D. Chapman had conveyed said three hundred acres of land to him, and had received large payments of purchase-money thereon; and this amended answer is to fill up and complete the history of the whole transaction; and answering said amended bill, he says that he did not owe said Chapman one cent at the time of his death on said three hundred acres of land, and therefore he does not deem it necessary for him to make any further answer to said amended bill in respect to the sale of said land, or any part thereof, &c. This answer is also verified by the affidavit of said Hiram Short.

By the record in the case of *Quarrier* v. *Heckert and Chapman*, referred to in the replication of the plaintiff and the answers of defendant, Hiram Short, it appears that said suit was brought in the county of Roane; and in his bill in that case the said Alexander W. Quarrier alleges substantially that Henry D. Chapman, by deed dated May 15, 1855, conveyed to Peter Heckert a tract

of land in the county of Gilmer, now Roane, containing two thousand nine hundred and fifty-eight acres, for $2,600.00, payable in five years from the date of said deed; that said Heckert executed a bond for the purchase-money above named with interest payable annually, which bond was payable to said Chapman; that a lien was reserved by said Chapman upon the land to secure the payment of the purchase-money, which lien appears from the deed aforesaid; that some time after the said Chapman for a valuable consideration assigned this bond to plaintiff, the same having been in payment for certain bonds bought by said Chapman from plaintiff; that the assignment is dated September 27, 1855, as appears from the endorsement on the bond; that he, Quarrier, claims that by reason of the lien reserved in said deed from Chapman to Heckert, with the assignment to plaintiff, Quarrier, of the bond and its securities he has a lien upon the land in said deed described, for the full amount of said bond. He also avers that said Heckert has not paid said bond or any part thereof, and he asks that the lien reserved in the said deed may be enforced, &c. To this bill said Heckert and Chapman alone are made defendants.

Such proceedings were had in the cause upon the last named bill as that on the 22d October, 1860, the court ascertained that there was due from said Heckert to A. W. Quarrier, assignee of said H. D. Chapman, the sum $2,600.00, with interest thereon from the 15th day of May, 1855, until paid, and that the same was a lien on the land in the bill mentioned conveyed by H. D. Chapman to said Heckert. And thereupon the court decreed, that unless the said sum of money was paid to said Quarrier and the costs of the suit in sixty days from the rising of the court, that Isaac N. Smith, who was appointed a special commissioner for the purpose, should sell the same, &c. It seems that subsequently H. C. McWhorter was appointed commissioner to make said sale, but it does not appear when. It appears by the report of sale of com-

missioner McWhorter that he sold said tract of land under the decree of sale on the 14th day of March, 1868, and at the sale said H. D. Chapman became the purchaser of the whole tract at the sum of $2,250.00 of which sum he paid in cash $112.50 down, leaving, the sum of $2,127.50 for which he gave his four several bonds for $534.37½ each with interest from date, payable at six twelve and eighteen months, respectively, with Calvin Tyson his security. All of which commissioner McWhorter reported to the court.

Afterwards on the 12th day of May, 1868, the said court confirmed said sale made and reported by said McWhorter to said Chapman; and afterwards on the 5th of March, 1869, the court by its decree ascertained that the first of the purchase-money bonds, so given by said Chapman and his said surety to commissioner McWhorter, was past due, and decreed that said Chapman within ninety days from the date of the decree pay to said commissioner McWhorter the amount of the said bond then due and payable with its interest, and upon his failure so to do ordered that said commissioner McWhorter should sell for cash the tract of land theretofore sold by him in the cause and purchased by said Chapman to pay the purchase-money of the former sale; but the court credits said Chapman in this decree with $150.00 paid November 12, 1868, as per commissioner's receipt of that date. It seems that the plaintiff, A. W. Quarrier, died, and that the suit was revived in the name of his administratrix, C. W. Quarrier.

Afterwards on the 5th day of August, 1869, said court entered another decree upon said last named bill, in which it is recited that said commissioner McWhorter, appointed to make sale of the lands in the bill mentioned for cash to satisfy and pay the first bond by defendant, H. D. Chapman, for the purchase-money of said land made at a judicial sale had in the cause, made his report of sale of two lots, or parcels of said tract of two thousand nine hundred acres, one containing three hundred acres

and and the other two hundred and eighty-seven acres, which sale was made under an agreement of the parties in interest and filed with said report, which is in the words and figures following :

"Agreement made and entered into this 3d day of August, 1869, between the complainant by her counsel, H. C. McWhorter, and H. D. Chapman, Hiram Short and A. H. Short; whereas in the above cause a decree was rendered by said circuit court at the March term, 1869, to sell for cash the tract of twenty-nine hundred acres of land in the proceedings in this cause mentioned, to satisfy and pay off a balance of a bond of $534.37½ given by H. D. Chapman as a payment for the purchase of said land under a judicial sale in said cause, which balance together with interest and costs of sale now amounts to $452.00; and whereas, the said Chapman has heretofore sold to said Hiram Short three hundred acres of said tract, and to A. H. Short two hundred and eighty-seven acres of said tract, and the said Hiram and A. H. Short agreeing that their said two tracts may be sold under the notice given for the sales to be had to-day, to sell the whole tract for cash to satisfy the said sum of $452.00, now therefore, this agreement witnesseth, that the said complainant on her part agrees to proceed no further against the said two tracts of land for the balance of the purchase-money due on this two thousand nine hundred acre tract from H. D. Chapman, and forever release all claim upon the same for said purchase-money; and the said Chapman agrees that the same proceedings may be had against the residue of said tract of two thousand nine hundred acres for the payment of the balance of this purchase-money under the said former judicial sale as might have been had for the same against the whole tract, if this sale of the said two tracts had not been had, and the said Chapman agrees that the residue of said lands may be sold in lots or as a whole to satisfy and pay off the bonds still unpaid for said purchase-money as they respectively fall due, and that this agree-

ment may be entered as the decree of the court, and the
commissioner H. C. McWhorter, who is hereby appointed
for that purpose, may from time to time proceed to sell
the same as hereinbefore provided, for cash upon giving
notice of the time and place of sale by posting notice at
the front door of the court-house of Roane county, after
the said bonds shall respectively fall due upon failure of
said Chapman to pay the same.

"(Signed) "H. C. McWhorter,
"Commissioner for C. W. Quarrier, adminstratrix.
" H. D. Chapman,
His
"Hiram ⋈ Short,
mark.
His
"A. H. ⋈ Short.
Mark.

" There being no exceptions taken to said report, the
same is approved and confirmed in all things and ordered
to be filed; and this cause now coming on to be further
heard upon the papers and proceedings heretofore had,
and it appearing from said report that Hiram Short and
A. H. Short became the purchasers of the two tracts of
land mentioned in the above agreement, and that they
are now entitled to a decree therefor from the de-
fendant, Peter Heckert, the said three hundred acres
to be conveyed to Hiram, and the two hundred
and eighty-seven acres to A. H. Short, the court
further decrees that the said Heckert do within five
days from the date of the decree make, stamp and
acknowledge for record a deed with covenants of
special warranty, conveying to said Hiram Short the
tract of three hundred acres described in a deed from
Chapman to said Hiram Short, dated October 27, 1861,
and of record in the recorder's office of Roane county,
and conveying to said A. H. Short the said tract of two
hundred and eighty-seven acres described in a deed from
said Chapman to A. H. Short, dated October 27, 1864,
and of record in the recorder's office of Roane county,
100

as containing two hundred and sixty-six acres, more or less, and upon his failure to make such deeds, then that H. C. McWhorter, who was appointed special commissioner for the purpose, do for and in the name of and behalf of said Peter Heckert make, stamp and acknowledge such deeds in the same manner as is required of said Heckert. And the court decrees that the before recited agreement be made a part of the decree, and that upon the failure of said Chapman to pay the said bonds as they respectively fall due, the said commissioner do proceed to sell for cash the said residue of said two thousand nine hundred acre tract, or any part thereof, in pursuance of said agreement by giving thirty days' notice as therein provided, without any other or further decree," &c.

It further appears that on the 12th day of August, 1871, the said court made another decree in said cause by which it is recited declared and decreed in substance as follows : The defendants having satisfied the decree of the plaintiff heretofore rendered in this cause on motion of of the plaintiff, by her counsel, special commissioner McWhorter is permitted to withdraw his report of sale last made by him, at which sale the plaintiff became the purchaser of the lands therein mentioned, and the said sale is set aside and held for naught, and the purchase-money of the former sale by said commissioner, at which H. D. Chapman was the purchaser, having been paid by the payment and satisfaction of the original decree in favor of the plaintiff, and the said sale having heretofore been confirmed, the heirs of the purchaser, Henry D. Chapman, deceased, are entitled to a deed for the land so purchased by said Chapman, except the tracts of three hundred acres and two hundred and eighty-seven acres, respectively, heretofore conveyed to Hiram and A. H. Short under a decree hereinbefore rendered. And the court also decreed that unless said Peter Heckert do within three days from the date of the decree make and deliver to the heirs of H. D. Chapman, to-wit : Jennet

·C. Bill, Jane E. Schilling, Isabel C. Woodyard and
Nancy A. Kidd, a deed conveying the land purchased as
:aforesaid, with the exception aforesaid, by H. D. Chap-
man with covenants of general warranty, and upon his
failure so to do then that Henry C. McWhorter, appoint-
·ed a special commissioner for the purpose, do for and in
the name and behalf of Peter Heckert make and deliver
to said heirs such deed with covenants as aforesaid. The
deed from H. D. Chapman to Peter Heckert is dated the
15th day of May, 1855, and the consideration therefor
specified in the deed is $2,600.00, payable in five years from
the date of the deed. The deed is a deed of general warranty.
It states the metes and bounds of the land, and retains a lien
·on the land for the payment of the purchase-money, and
was admitted to record in the clerk's office of the county
·court of Gilmer county, on the 10th day of July, 1855.
The deed from commissioner McWhorter to Hiram
Short for said three hundred acres of land purports to be
for the consideration of $1.00, and of the provisions of
said decree directing him to make the·deed, and is a deed
of special warranty. It appears that on the 7th day of
March, 1878, the plaintiff in the cause at bar replied
generally to the said supplemental answer of defendant,
Hiram Short.

The commissioner, to whom this cause was referred as
hereinbefore stated, reported to the court that the de-
fendant, Hiram Short, claims payments and sets-off
:against the demands of the plaintiff as follows, viz. :

| | |
|---|---|
| April 1, 1866. By paid W. Beckner's account | $26 00 |
| ·June 18, 1867, By amount paid C. C. Smith | 120 00 |
| ·June 18, 1867, By amount paid Hiram Chapman | 60 00 |
| ·June 18, 1867, By cow to Dr. Chapman | 25 00 |
| ·June 18, 1867, By rent for 1865, '66 and '67 | 150 00 |
| August 9, 1869, Paid H. C. McWhorter, commissioner | 225 00 |

Total........................................................................ $606 00

Of the foregoing items of credit claimed by the de-
fendant, Hiram Short, the commissioner rejected the fol-
lowing, viz.: William Beckner's account, $26.00 ; rent

for 1865–6–7, making a total of $176.00 of defendant, Hiram Short's claim of credits and offsets rejected by the commissioner. The said commissioner ascertains, after allowing the said Hiram Short so much of the credits claimed by him as in the commissioner's opinion he is entitled to, that the defendant, Hiram Short, is indebted to the plaintiff upon the said third and fourth purchase-money bonds made by said Hiram Short to said Chapman in the bill mentioned, in a balance including principal and interest up to the 31st day of August, 1875, of $249.23.

The defendant, Hiram Short, filed exceptions to the report of said commissioner, which exceptions are as follows :

" First. Said commissioner rejected and refused to allow the credit for $26.00, referred to in said report and the depositions accompanying the same as the ' Beckner account.' Second. Commissioner refused to allow defendant credit for $150.00, for rent of ' Heckert improvement,' referred to in said report and depositions, which account and rents were fully proved before said commissioner, and should have been ·allowed as a credit on the demand against defendant. Third. Commissioner refused to allow as a credit $25.00 paid by C. C. Smith for defendant and fully proved before said commissioner."

Several depositions were taken by the plaintiff and defendant, Hiram Short, which are a part of the record.

It appears by the record that on the 5th day of September, 1878, "this cause was further heard on the bill, amended bill, the answer of defendant, Hiram Short, and replication thereto ; and taken for confessed as to the other defendants, and upon the amended and supplemental answer and replication thereto ; the depositions, and the report of commissioner, S. G. McCulloch, and exceptions thereto ; and upon the papers in the case of A. W. Quarrier's administrator against Heckert and Chapman, in chancery, referred to in Hiram Short's answer to the amended bill ; and the court overruled the said ex-

·ceptions to said report and confirmed the report. The court also ascertained that there was due plaintiff from said Hiram Short the sum of $249.23 on the 31st of August, 1875, and that the principal and interest to the date of the decree amounted to $282.21, and that amount is a lien, &c. And the court rendered a personal decree against said Hiram Short for the said sum of $282.21, with interest thereon from the date of the decree till paid, and the costs of the suit. The court further decreed that unless the said Hiram Short within twenty days from the date of the decree does pay the said sum, with interest as aforesaid, and the costs of this suit, that A. B. Wells, Esq., who is appointed a special commissioner for the purpose, sell at public auction, &c., the tract of land mentioned in exhibit number one. But the court further recites in said decree; "and it appearing that parts of said tract of land have been sold by the said Short to C. C. Smith, James A. Butcher and Josephus Short, said commissioner is ordered to first sell the unsold part of said land, and if the same shall sell for enough to pay the amount decreed the plaintiff, including principal, interest and costs and expense of sale, then the other parts shall not be sold ; but if said unsold part shall not sell for said amount, then he shall sell the said parts sold by said defendant, Short, first selling the land of Josephus Short," &c.

From and to this decree the defendant Hiram Short obtained from one of the judges of this court an appeal and *supersedeas* ; and in his petition for such appeal and *supersedeas* he has assigned the following errors, viz: "1st. Because said Chapman, at the time he conveyed and warranted said land to the petitioner, had no title thereto; and said Chapman nor his heir at law had no legal title thereto, when said decree was pronounced. 2d. Because the said tract of land had been decreed to be sold, and was sold by H. C. McWhorter, a special commissoner, on the 5th of August, 1869, and that at such sale petitioner became the purchaser of said tract of three hundred

acres of land, paid said special commissioner the purchase-money, all of which proceedings were acquiesced in by said Henry D. Chapman in his lifetime. Your petitioner says that by said actings and doings on the part of said Chapman he was estopped from asserting the lien reserved in his conveyance to said petitioner. That it was a clear and manifest fraud in said Chapman not to have disclosed the true state of his title to petitioner. It was a *suppressio veri*, by said Chapman."

Before proceeding to consider said assignments of error, I deem it proper to remark, that it is not assigned as error that the court overruled the defendant's, Hiram Short's, exceptions to the commissioner's report, nor has it been so claimed or argued before us by the counsel of the said Hiram Short, either orally or in his brief. I have however examined said exceptions and the evidence in the cause in connection with said Short's answers, and it seems to me that said exceptions are not well founded, and that the court did not err in overruling them.

For brevity and convenience I will consider the said two assignments of error together. In the case of *Hull* v. *Cunningham's ex'r*, 1 Munf. 330, it was held, that "if the purchaser do not by eviction or otherwise lose the land he expected to get, but make an entry for it as vacant and obtain a patent, the proper *measure of relief* is only his amount of his expenditures in procuring the patent, with a reasonable allowance for trouble therein, and *actual costs* of suits." In *Piedmont Coal and Iron Company* v. *Duff Green et al*, 3 W. Va. 59, it was held : "3d. In an enquiry had by a Virginia court respecting alleged defects of title to the lands in Virginia, the question should not be exclusively as to what defects existed in the vendor's title at the time of the sale, but rather what defects exist therein at the time of such investigation, which would defeat the possession or enjoyment of the land by the vendee. 4. When a vendee of real estate has had and held possession thereof under title from his vendor, until defect of title has been cured by lapse of

time or the statute of limitations, he is not allowed to set up such pretended defect, however defective the title may have been at the time of the purchase."

This case was a suit to enforce the payment of purchase-money against lands. The defendant in his first answer does not claim relief against the payment of the purchase-money, because of want of title in Chapman at the time he sold and conveyed to him the three hundred acres of land, nor on account of fraud practiced on him by Chapman in relation to the title to said land. He does not charge fraud upon Chapman in the transaction or ask a rescission of the contract of sale and deed of Chapman to him. On the contrary thereof he claims that by agreement he was to have credit for the amount he paid commissioner McWhorter on his purchase-money bonds, and for damages occasioned in the premises; and his whole defense in said answer is "that he has well and truly paid off and discharged the whole of the purchase-money secured by the bonds filed with the bill." He does not pretend to claim, or set up as a defense to the plaintiff's demand in said answer, a want of title or fraud of any description upon the part of said Chapman in the sale or conveyance to him. The defendant, Hiram Short, had constructive notice at least of the deed from Chapman to Heckert, at the time he purchased from Chapman; and the suit of Quarrier against Heckert and Chapman, according to said Short's own showing in his second answer, had been pending in the circuit court of Roane county over three years, when he made the purchase from Chapman. Some of the facts stated by said Short in his second answer have very much the appearance of an after-thought. In it he states substantially that it was agreed between him and Chapman, that he, respondant, was to pay H. C. McWhorter, commissioner, the one-half of $452.00 to release the same (meaning his said three hundred acres) from further liability on account of purchase-money from Chapman, on the payment of which sum he, respondent, was to have a deed from said com-

missioner, H. C. McWhorter, in fee simple clear of all liens and encumbrances. This latter fact was not stated or relied on in the first answer. But he further says in the second answer, "that said Chapman at the time of his death had no lien on said three hundred acres of land, but that this respondent had wholly paid the purchase-money with said Chapman's assent, and obtained his deed clear of liens; said Chapman had conveyed said three hundred acres of land to respondent and had received large payments of purchase-money thereon, and this amended answer is to fill up and complete the history of the whole transaction." The written agreement made in the Quarrier suit, which I have set out in full, does not say that the defendant, Hiram Short, is to have a deed from said commissioner, McWhorter, for said three hundred acres, clear of all liens and encumbrances; but it does say that the plaintiff, Quarrier, " agrees to proceed no further against the said two tracts of land for the balance of the purchase-money due on the two thousand nine hundred acre tract from H. D. Chapman, and forever release all claim upon the same for said purchase-money." What purchase-money? Clearly not the purchase-money due from Hiram Short. But the purchase-money due from Chapman upon his purchase from commissioner McWhorter at the sale made by him as such commissioner, which had been confirmed by the court. It is somewhat singular, if it was a part of the agreement that defendant, Hiram Short, was to be released from the payment of all the purchase-money then due from him to Chapman upon the payment of $225.00, a little over half the amount he owed Chapman on his purchase-money, that it was not so inserted in the written agreement signed by the parties.

Again the court directed that the commissioner, McWhorter, should only make special warranty deeds to the Shorts, which is the usual practice in such cases, but the court decreed that said commissioner should make a deed of general warranty for the residue of the tract to said

1879
Special Term.

Schilling, Adm'r
v.
Short.

Chapman's heirs. " If the vendor has no title at the time of the contract, but afterwards acquires it, the vendee may compel him to transfer it. 1 Pow. on Mortg. 225 ; Sug. 523. It is sufficient that the vendor can make a title at the time of the decree, whether he is sued for a specific performance or is seeking to enforce it, unless in the latter case where the time of conveyance has been made the essence of the contract." See 1 Mad. 348. Luker's Com., 3d ed., 2 vol. 454.

The defendant, Hiram Short, does not allege any reason or excuse in his second answer why he did not set out the matters therein in his first answer. But taking the whole of his second answer together and scanning it closely, it seems to me that it amounts to nothing more than a defense that there was no vendor's lien upon said land which the plaintiff had the right to enforce, because he had fully paid said purchase-money bonds to and for said Chapman. He does not plead or rely upon the want of title in Chapman at the time of the contract of sale to him as a defense, nor does he allege fraud upon the part of Chapman as to the title as a defense, or ask a rescission of the contract and deed of Chapman to him, and to be placed *in statu quo,* or anything of the kind. But on the contrary his defense is payment.

From a close examination of the whole of this case I am satisfied, that at the time Chapman sold to defendant, Short, he expected to procure the legal title through a sale of the two thousand nine hundred and eight acres for the non-payment of the purchase-money in which he was interested. And in accordance with such expectation, and in order to comply with his contract and conveyance to the defendant, Hiram Short, as well as his brother, A. H. Short, he did purchase said two thousand nine hundred and eight acres of land at the commissioner's sale and paid the down purchase-money, and gave his bonds with personal security for the payment of the residue, which purchase was confirmed by the court. And when the first bond became payable, and the court

decreed the land to be sold, on or about the day it was to be sold by an arrangement between said Chapman and said Hiram Short it was agreed, that said Hiram Short should pay McWhorter one-half or thereabouts of the said $452.00, the amount of the purchase-money and interest then payable from Chapman on his said purchase, and that there should be a mere informal sale by said commissioner to said Hiram Short, of said three hundred acres, and reported to the court for confirmation, and that said Hiram Short should be credited on his purchase-money bonds to Chapman for the amounts so paid by him to said commissioner ; and the same as to said A. H. Short.   It seems to me this is fairly deducible from the whole evidence taken in connection with the answers of said Hiram Short.   And that said Hiram Short having paid $225.00 to commissioner McWhorter, in pursuance of such arrangement, as ascertained by the commissioner, it was proper that the commissioner should allow him credit therefor.   To suffer Hiram Short to violate this arrangement would be a fraud upon the estate of Chapman, because but for the said arrangement Chapman might, and doubtless would, have raised the money otherwise, and paid the $452.00 himself, as it seems from the Quarrier record was done afterwards as to the residue of the purchase-money and the residue of said two thousand eight hundred and nine acre tract.

The argument of the counsel for appellant, which is a printed brief on file, insists principally on the reversal of the decree appealed from on the ground of fraud in Chapman in the sale and conveyance to the appellant in *suppressio veri ;* but as before stated, it seems to me that matter is not properly put in issue by the pleadings, to authorize an enquiry into it by this Court.   It is not properly pleaded or relied on in the answers, to put it in issue.   Whether it could have been successfully pleaded in the answers in this case, I do not feel it necessary to express an opinion, as the question does not fairly arise. Although said Chapman did not procure the legal title

in said three hundred acres to be conveyed to himself, instead and in lieu thereof, it seems to me, he did under the arrangement aforesaid procure the legal title thereto to be vested in the defendant, Hiram Short, with the assent of said Hiram Short, and that he did so as the interested vendor of said Hiram Short, to perfect the legal title in him, and thereby make his contract of sale and the balance of purchase-money due him secure and beyond further question. This it seems to me was understood by the defendant, Hiram Short, and I think the allegations, statements and averments of his answers filed in the cause tend strongly to verify this conclusion, if there was no other evidence in the cause tending to establish the same result.

Upon the whole it seems to me that, under the circumstances appearing in this case, it is just and equitable that the appellant should pay said balance of purchase-money, which the court below ascertained and decreed against him in favor of the plaintiff, and that the said errors assigned by the appellant are not well founded in this cause. And there being no other errors assigned or suggested by the counsel for the appellant than those I have considered, and none discussed, the decree of the circuit court of the county of Roane, rendered in this cause on the 5th day of September, 1878, must be affirmed with costs and damages according to law against the appellant, Hiram Short.

JUDGES JOHNSON AND GREEN CONCURRED.

DECREE AFFIRMED.